Good morning. Our first case on the call of the docket today, Tuesday, September 11, 2012. Is agenda number one, case number 111835, People v. Michael Colyar. Counsel for the appellant, please proceed. Good morning, your honors. May it please the court, counsel. My name is Anne Magatz. I am an assistant state's attorney from Cook County, and I represent the people. Your honors, the appellate court's opinion affirming the circuit court's order suppressing all of the legitimate evidence in this case should be reversed. Contrary to the appellate court majority's analysis, all of the facts and circumstances confronting Officer Elcott and Detective Johnson in this case justified every step of their investigation. Your honors, the facts in this case are not disputed, and this court should review de novo the circuit court's ultimate ruling with respect to whether suppression was warranted. In this case, Officer Elcott and Detective Johnson were working routine patrol in East Hazel Crest, Illinois, and they went to the Super 8 motel there because they regularly patrolled the motel parking lot for parties and things of that nature. Now, this hotel parking lot had two entrances. It had a south entrance and a west entrance. And when the officers arrived there, they could not access the parking lot through the south entrance because defendant's car was blocking it. Therefore, the officers had to drive all the way around the motel building to access the parking lot through the west side. And when they did, defendant's car was still blocking the south entrance. The officers waited a little while longer, and after defendant's car still hadn't moved after several minutes, they decided to approach to find out why. They drove their car toward defendant and parked it nearby and approached defendant's car on foot. Officer Elcott stood at the driver's side of defendant's car, and Detective Johnson stood at the passenger's side. Now, defendant's car contained three people at this time. Defendant was in the driver's seat, there was a front seat passenger, and there was also a person in the rear passenger seat. And this person had just come from the area of the motel, and the area of the motel was about 50 to 100 feet away from where defendant's car was parked. At this time, it was about 8.45 at night, it was dusk, there was nobody else in the immediate vicinity, either on foot or in a car, and defendant's car engine was running. Now, Officer Elcott asked defendant what he was doing, and defendant said that he was waiting there to pick someone up. And just as officer Elcott, or excuse me, just as defendant said this, Detective Johnson motioned to Officer Elcott and told him that there was a plastic bag sticking up out of the center console of defendant's car. So, Officer Elcott shined his flashlight into the center console, and there he saw a live pistol round sticking up in this plastic bag in the center console. He identified it as a pistol round. He testified that it was a three-inch bullet, it was the largest pistol round he had ever seen, and that it almost looked like a rifle round. Your Honors, after the officer saw this pistol round, he asked everybody to exit the car, which they all did, and they were all handcuffed and placed at the front of defendant's car. Officer Elcott then went directly to the center console, grabbed that plastic bag, and in it he found not only that bullet he had seen while standing outside of the car, but four additional identical live pistol rounds. And Officer Elcott testified at the suppression hearing that they were .454 caliber ammunition. Now that he had found five, a bag of live ammunition, five live rounds, Officer Elcott and Detective Johnson frisked defendant and his passengers. And during the pat-down search of defendant, he felt a similar type bullet in defendant's outer front pants pocket. Upon discovery of this live, loose round in defendant's pocket, and defendant was the driver, as well as the bag of ammunition in the car, Detective Johnson went directly to the floorboard of the front passenger side of defendant's car, and he recovered a .454 Red Wing revolver. He then recovered the revolver, and then transported defendant and his two passengers to the police station. The convicts were then taken back to the police station and sent back to the federal police department. And the bullets found for that particular gun... They yes, they went, they did go together with that gun. An investigatory stop pursuant to Terry is allowed under the totalitary of the circumstances. What circumstances would justify this kind of a Terry stop? The circumstance in this case would be the fact that a live pistol round was seen inside the center console of a car that was running, contained three people, which outnumbered the officers, at a time when the car had been blocking the parking lot entrance for several minutes. But the bullets aren't contraband? They're not contraband per se. However, there's no rule that something that's not contraband per se can't give rise to a reasonable suspicion that some sort of criminal activity is afoot. There was some allegation that the officers were in fear of their life. How does the bullet present that kind of a response from the officers? In this case, the officers were concerned for their safety and all of their actions reflected a concern for their safety. And based on this live pistol round, coupled with all of the facts and circumstances in this case, which included three people in a running car with a bullet sticking out of the console, an officer could reasonably suspect that any one of those individuals might be armed or that they may have immediate access to a firearm in the car. And it behooved them at that time to take protective measures to maintain the status quo so that they could then investigate their reasonable suspicion based on the bullet, coupled with all of the circumstances, that some sort of criminal activity was afoot. So, Counsel, you're saying that when the officers saw the bullet, that that was sufficient for a terrorist attack, correct? When they saw the bullet, bullets are inextricably linked to firearms. And a live pistol round has only one known purpose. And upon seeing that in these circumstances, it was incumbent on them to investigate. So it's a terrorist. What I really want to go through is kind of a timeline. When you think certain legal ideas attached here. So based on seeing the bullet, the officers were justified on a terrorist attack, is that right? The bullet coupled with the circumstances, yes. And that gave them the right to order everyone out of the car? Yes, Your Honor, for safety. For safety, for the police officers' safety because they saw a bullet? For officer safety and public safety. And then the three men were handcuffed. Was that based upon the terrorist act as well? That's correct. This was an investigatory, a brief investigatory detention, merely to maintain the status quo and protect the officers from any immediate threat of danger so that they could then investigate without risk of a gunshot their reasonable suspicion that some type of criminal activity may be occurring. So the arrest did not take place until after the recovery of the gun? That's correct, Your Honor. And then my last question is in terms of timeline as you see this. When did the officers have probable cause to search the car? Your Honors, our position is that when the officers looked in the car, this was nothing more than a protective sweep for weapons pursuant to Michigan v. Long. And at that time, under Long, they could look in the car for a weapon that would be immediately accessible to any of the occupants of the car. After they were out of the car and handcuffed? That's correct, Your Honor. Additionally, we would maintain that there was also probable cause at the time that the officers looked in the car to look for evidence of a crime that there was probable cause that there may be some sort of contraband in the car at that time. Because in this case, the facts escalated as the officers' investigation continued. What started as one bullet, one live round in plain view turned into a bag of live ammunition and from there turned into a loose bullet of the same caliber on the person of the driver. And at that point, with multiple identical bullets found from different locations, there is a fair probability that evidence of a weapons offense could be found in the car. However, the officers looking in the car, limited to those areas where a weapon could be concealed, was fully justified under a Terry stop. Was there any questioning of the defendants if they had an FOI card or any of that? Why they had the gun? There was no questioning prior to his arrest. So they could have had the gun legally? They could have had the gun legally, but reasonable suspicion is not besheeded, just because a weapon might ultimately be recovered, or a weapon might be legal. Or even if there's no probable cause developed during the search. The whole basis of a Terry stop is investigative. And when there's specific and articulable facts that lead the officer to believe that some crime may be occurring, it's incumbent on them to investigate. A bullet may not be contraband per se, but things that aren't contraband per se, coupled with other things together, with reasonable inferences drawn therefrom that police officers are entitled to make, could lead an officer to reasonably believe that some crime may be committed and that officer's safety is in danger. The whole premise in Terry was that the officers imbued multiple acts, none of which in and of themselves were illegal, but together gave the officers some sort of reasonable suspicion. And again, in Wardlow, the officers saw a defendant running in a high crime area when he saw the police. It's not a crime to be in a high crime area, and it's not necessarily illegal to run when you see the police. But these two factors, these two potentially ambiguous factors put together, gave rise to the officer's reasonable suspicion. And they're not required to stand by and try to figure out if there's an innocent explanation for what's going on. When the officer saw that bullet in the context of the circumstances of this case, it would be unreasonable for them to stand by and investigate standing outside of the car and inquiring whether it's about an FOID card, whether they have a gun, and whether it's lawfully possessed. Because at that point, the ultimate issue, or the primary issue, became officer safety. Was the Terry issue raised at the suppression hearing by the state? Yes, Your Honor, it was. And specifically? Specifically. The people argued that upon seeing the bullet, the officer could reasonably suspect that there may be a firearm in the car, and that the officers had ordered everybody out of the car for safety. And the trial court, at the initial suppression hearing, even went so far as to say that when the officers frisked the defendant and the passengers, that it was a Terry-productive pat-down search. So, Your Honors, the people have not forfeited an argument or a basis on reasonable suspicion. And in his brief, defendant does not contest that the people forfeited that issue. Your Honors, one of the errors that the appellate court majority made in this case was to apply Arizona v. Gant and to conclude, based on Gant, that the officers violated defendant's Fourth Amendment rights when they went to the passenger compartment of the car and recovered the gun. Your Honor, Arizona v. Gant is not at play in this case. In Gant, the court held that officers may make a search of a car incident to a recent occupant's arrest when the officer reasonably suspects that the car may contain evidence of the offense of arrest and when the person who's under arrest may potentially access the passenger compartment of the car. In Gant, the defendant was arrested for driving on a suspended license. He was handcuffed and put in the back seat of a locked police car. In that case, Gant said that the officers were not justified in then searching the car because there was no reasonable expectation that evidence of driving on a suspended license would be found in his car. And additionally, the defendant was handcuffed in the back of a locked police car on his way to the police station and there was no concern that he was going to access the car and obtain a weapon that could be used against the officers. Now, in this case, Your Honors, the underpinnings of Gant were not at play. There was a nexus between the reason that the officers stopped the defendant, which was concern of some criminal activity that may involve a firearm, and that officer safety was at risk. And there was a nexus between that and what the officers did. They went directly to an area inside of the car where a firearm might be concealed and they found one. Additionally, unlike in Gant, the concern that one of the offenders could access the car wasn't allayed by the fact that they were in handcuffs because if probable cause did not develop outside of the car, the defendant and the passengers would have been permitted to reenter the car and then would have had access to that firearm. Your Honors, this case presents precisely the type of scenario the Terry Court had in mind when it carved out an exception to the Fourth Amendment warrant requirement. When an officer needs to take protective measures to neutralize realistic threats of violence posed to them when they're investigating criminal activity. The officers' actions in this case were fully in line with what the Terry Court had in mind. Based on their concern for safety, and every act that they took fully reflects their safety concerns, and they did no more than was necessary in this case to ensure their safety. Every step of their investigation was reasonable. It was justified by the facts as they incrementally developed, and they fully comported with the Fourth Amendment. Your Honors, for the reasons we've set forth today and those in our briefs, we respectfully request that you reverse the appellate court's opinion affirming the circuit court's order, suppressing all the legitimate evidence in this case. Thank you. Thank you. Counsel for the appellee. Good morning. May it please the Court, as I indicated in my brief. Excuse me. Please state your name for the record. Oh, yes. Algis Valunas, B-A-L-I-U-N-A-S, on behalf of Michael Collier. I would like to first address a question that Justice Freeman asked about the bullet. It's been mentioned that it was a pistol bullet. That observation was made after the recovery of the weapon. Officer Alcott specifically indicated that when he first observed this cartridge, it was approximately three inches long, and he believed it to be a rifle bullet, period. I just wanted to clarify the record in that regard. I indicated in my brief. Excuse me. That's in the record that was identified initially as a rifle bullet? Yes, absolutely. That his initial identification was that it was a rifle bullet. Sometime during the course of the testimony, it was referred to as a pistol round, but that obviously was deduced after the firearm was recovered and found to be a .454 caliber weapon, revolver. But Officer Alcott indicated initially that it appeared to be a rifle bullet, definitely in the record. So the investigation in the minds of the officers would have been looking for a rifle? Initially, yes, and that's the crucial part of the case, is what the officers perceived initially with the first contact with the defendant. I think the State misplaces their emphasis on the bullet and the bullet that was recovered from the vehicle, rather than the true circumstance that they should be looking at,  And these circumstances, as I indicated in my brief, are absolutely benign. You have a car parked, waiting for an individual. The police observed an individual exit the motel, come into the rear seat of the vehicle. There's never been any testimony of any furtive conduct as the officers approached the vehicle. There was no leaning, bending, anything that would give rise to suspicion of any criminal activity. As a matter of fact, the officer indicated that they were looking at the lot for parties and stuff of that nature. There are young kids that party there in the hotels. This is quite different from all the other cases in the legion of cases that the State has cited. Usually in a Terry situation, there has to be criminal activity afoot. If this motel, based on their experience, the parking lot is subject to narcotics dealing. Maybe it's a brothel. Maybe there's prostitutes and pimps. Things where, if a bullet is seen in a vehicle, would cause great concern. But here, as I indicated in my brief, these people could have been attending an NRA convention. As the police officers approached the vehicle, again, no furtive conduct. There's no criminal activity. Officer Alcott was specifically asked, was there any criminal activity of any nature? Answer, no. The only thing he observed was this rifle bullet.  There's no import to the fact that they were blocking the entrance to the hotel? No. They were not blocking the entrance to the hotel. They were parked in an area that if the squad car came in, and that was the only vehicle that came in. There were no other vehicles. They weren't, let's say, blocking other entries into the hotel. The squad car came in and toured the entire area, but had to turn, I guess, to the right, because the left side was being blocked. I mean, they could have blown their horn or whatever, but they chose to do their round and then come around and look at the vehicle. And the explanation is simple. They were waiting for somebody to exit the hotel. And during their approach to the vehicle, an individual did, in fact, leave the hotel and enter the vehicle at the rear seat. A reasonable explanation of the facts, why they are there. Why they continued to the vehicle to ask for the explanation, I don't know, but they have a full right to do so. But the blocking is of no consequence. Besides that, it's private property. Complaint to the hotel. This is not a public street. And it's easily explained. So the presence of ammunition in it of itself is not sufficient reason to suspect that there might be a weapon also present. Oh, no. There very well may be a weapon. But who's to say that it's not being carried legally? Who's to speculate on that? Well, does it justify investigating further? I'm asking, getting them out of the car? Yes, I would, yes. I believe so. Yes. Sir, do you have an FOID card? Now, that question, depending on the circumstances, can be asked at any time. Reasonably, if these officers were some sort of fear, why, I don't know, because they're not in a high-crime area, they're not in an area of whatever suspicious criminal activity, fine. Ask the individuals, for my protection, please step out of the car. Step out of the car. Do you have an FOID card? Yes, no. So let's just break it down into the timeline. So you are conceding that the officers had the right under Terry to order the people out of the car based on seeing the bullet inside the car. Is that what you're saying? Well, I would say yes. I would say yes for their own protection, I think, even in our society, even in this completely benign situation. But let's be reasonable. What did they do? They did not only order or ask. I would say ask, just as in a drunk driving case. For my own protection, please step out of the vehicle. Fine. But to order people, maybe we should have a distinction. To order people out of the vehicle is a different story than immediately handcuffing. You're agreeing there's enough for Terry, but that's the basis to have the people get out of the car. You're agreeing that Terry applies right there? Yes. Okay. All right, so now they're out of the car. Does Terry allow the officer to handcuff them? Yes, under circumstances. Under these circumstances? No, absolutely not. Absolutely not. Why not? Because there's no indication of any criminal activity whatsoever. What's the difference between this and the long case that seems to stand for the proposition that part of officer safety would be fear that if the occupants are allowed to reenter the vehicle, they might have access to a gun? The long case, the factual situation is nowhere near this situation. This situation occurs in daylight, dusk. In lawn, the officers are there at midnight. They encounter a vehicle committing traffic violations, running off the road, and then their initial inquiry with respect to the driver is like the driver is unable to respond, seems to be under the influence of something. They speculate, I guess, narcotics, and he's walking back to his vehicle with the door open, and there's a huge hunting knife laying there. I think the facts are totally different than the benign situation we have here. Does it make any difference that there were three occupants of the car and two officers on the handcuff issue? I don't believe they had a right to handcuff them under these circumstances. They handcuffed them like a string of bass at the front of the car. The interesting thing is after they did that, why didn't they ask them right there? Does anybody have an FOID card? That's the key here. There's nothing illegal about the ammunition. So you agree that Terry allowed the officers to order the people out of the car? A form of Terry. Pardon? I would say an extension of Terry. It's a Terry-like inquiry. There are various measures under Terry that officers can take. Well, that's my next question. Once the officers had the right to have the people outside the car, you objected to handcuffs. Did the officers pursuant to Terry have the right to a pat-down search? Yes. Yes, of course. And what's interesting is they patted down the defendant and seized a bullet from his pocket. So the pat-down was negative for weapons. But does that impact the reasonableness of the conduct? In other words, there's not only a bullet in the car. This guy's got a bullet on him. Maybe he doesn't. No, the best thing I can say is this. Let's assume this car, for the purposes of argument, is at a Walmart parking lot at 830 rather than the Motel 8 in East Hazel Crest. You have three individuals in the car blocking some kind of a parking space. An officer comes to inquire, observes the ammunition in the vehicle. Well, that could have been just purchased at the Walmart. What criminal activity are we talking about here? Do they sell bullets individually? Of course. Okay. No, they sell them in a box, but you can remove them. I mean, you said it was just purchased, I assume. No. It was just purchased. It would still be in a box. No. Let's say you were with other individuals and you were shooting and you have bullets all over the car, and you went to buy some more for one of the individuals that ran out of a particular round. You could be wearing a bandolier. Would that justify being handcuffed and dragged out of the vehicle? So they have right under Terry, order him out of the car, pat them down. They find another bullet. That's fine. You told us that's fine. Okay. So now they have more than one bullet, and they go into the car, right? Yes. Do they have a right to do that given the development of evidence here? Absolutely not. Does it rise to a level that long? No, there still is no criminal activity. Where is the criminal activity? Where is one's fear for their safety? It's a simple question. Maybe search my client and recover his wallet and see if he has an FOID card. Are we going to be arresting people just because they have ammunition? And this is an arrest. When did the arrest take place? I suggest the arrest took place at the time of the handcuffing. I thought you told us they had a right to do that under Terry. No. I said that they had a right to ask the people to step out of the vehicle. I think that would have been reasonable conduct under the totality of the circumstances. But, no, I don't believe they had a right to. Where does it end? What if they ask the defendant, do you have an FOID card? And he said, yes. And they said, could you show it? Let me see it. Yeah, let me see it. I don't have it. It's at home. Can they go search the car? No. Yes, of course. He's under arrest. You must possess a valid FOID card on your person, period. At home doesn't do any good. You are under arrest right now. So there's no calling. There's no doing anything. You don't have it on your person, you're under arrest. The laws are very clear in that regard. And that's for the possession of the ammunition at that point. That's correct. It seems to me that when you stressed that the officer thought this was a three-inch rifle bullet at the outset, is that key to your argument that there's no fear for officer safety in letting these individuals go back to the car? I think it lessens it. That is, the two officers wearing bulletproof vests, fully armed, one on one side of the vehicle, one on the other, observe a rifle round. Just a casual inspection of the vehicle would indicate that there was a presence of a rifle. It would be more consistent. So it lessens the danger to the officer, in my opinion. And that's why I emphasize it. Take any kind of a hunting situation. I mean, people have ammunition in their cars. Does that justify, is that criminal activity? No. State police officer stops you for speeding, you're going hunting, you have ammunition in the car. What's he supposed to do, immediately order you out of the car and handcuff you to determine if you have a FOID card? We're looking at the thought process of the officer. In fact, are you saying in each and every case in which there would have been, in this case, if there had been a question relating to a FOID card? And let's just say even the defendant says, here is the FOID card. Yes. Does, at that point, in every instance, negate the fact that an officer might still fear for his safety? Yes. Every instance. So he says, I saw the bullet laying in the car. I felt there was one on his person. I didn't want to let this guy reenter the car. Whether a Ford card or not, legal ammunition or not, I was worried that this guy might shoot. That's a very interesting point. The point being is you have to look at the totality of the circumstances and where it is. You're in a high-crime area. You're familiar with it. You're in front of a dope house and you see the car. And even if the guy's got an FOID card, that may trigger in some officer's mind a fear for his safety. Then he may even further inquire. Sir, you have a weapon in your vehicle. Yes or no? Ask permission to search. But just to handcuff people at the front of the vehicle and immediately go search. Well, there's a little more than that, right? There's the seeing the bullet loose in the car. There's the pat-down that Justice Tice talked about that produces another bullet. I mean, can't the officer say in these type of circumstances I was worried about my safety? There's more there than just the fact that I had a handgun. What if he had 15 bullets? What if he were wearing a bandolier? There's nothing illegal about that. Well, that's the question. The question is if there's nothing illegal about what we mentioned, the FOID card example, can there still be circumstances in which the officer fears his safety and has a right to search the vehicle? Absolutely. I agree with that. But not in this case. You're saying these are not one and the same? These are not the same. In Long, yeah. In Michigan v. Long, of course. Here's a guy at midnight who runs off the road and is walking toward an open driver's side door with a weapon on the floor. Yeah, I'd be afraid of it. Or near a dope house or some other area involving criminal activity. Yes, of course. But in here, I mean, you may as well be in the Walmart lot as far as I'm concerned. Time has expired. Thank you. Thank you. Your Honors, I'd like to initially address the issue regarding the plain view bullet that was seen. At trial, Officer Elcott testified that he saw a bullet on direct examination. And then on cross-examination, he was asked to describe this bullet. He said it was approximately three inches long, it was a pistol round, it was the largest pistol round he had ever seen, and that it almost looked like a rifle round. Later, on redirect examination, he did agree with Defense Counsel's representation that it appeared like a rifle round. However, he testified specifically that this was a pistol round, the largest one he had ever seen. And his actions upon seeing this pistol round fully reflected his concern that it was indeed a pistol round. His actions did not reflect that he was looking for a hunting rifle in this case. Your Honors, defendant's theory in this case does not have support in the Fourth Amendment. Under his defendant's theory, an officer would be required to identify a crime and have evidence to support every element of that crime in order to effectuate a Terry stop. Terry does not require this level of specificity, excuse me, and nor does probable cause for that matter. Under defendant's theory, he's basically asking this court to create a heightened reasonable suspicion standard that sounds quite similar to proof beyond a reasonable doubt. Again, the circumstances of this case suggested to the officers that this live round, in the context of the facts and circumstances of this case, would leave an objectively reasonable officer to suspect that some sort of criminal behavior was occurring. An officer does not need to know what crime is occurring, and it does not need to prove possible affirmative defenses to the crime that could be occurring. And the officer doesn't need to identify and disprove possible innocent explanations for what they see, particularly in the context of a setting where an officer's safety is in danger. But counsel, didn't the officers not bother to even ask questions about, you know, investigation about why do we have the bullets or do we have an FOIA card? I mean, wouldn't that have helped in whether or not to articulate any further conduct by the police? Your Honors, the course of the officer's investigation needs to be reasonable, and reasonableness does not necessarily entail a conversation. And even if a conversation doesn't occur, it doesn't mean that what the officers did do was unreasonable. They have discretion when they conduct hairy stops. There's no script that they have to follow. And in this case, the investigation they conducted fully reflected their concern for safety and was responsive to the escalating circumstances as they presented themselves. Every step the officers took was fully in proportion to the facts as they played out before the officers. Your Honors, could you help me a little bit reconciling Gant and Long? In Gant, the court held that the police may search the passenger compartment of the vehicle. Incident to a recent occupant's arrest only if there's reason to believe the arrestee might access the vehicle at the time of the search. So if someone's under arrest, the general and they're outside the car, the police officers cannot search. Right? Under Gant? Under Gant, if there's no basis to conclude that they're going to be able to access the car, then, correct, they cannot search. But if there's not enough evidence for probable cause and arrest, if it's just a Terry stop, you're saying that the officer can search the car? The officer at that point certainly can't conduct a full-blown search of the car, and that's clearly not what the officers did in this case. But under the circumstances in Terry where the basis of the search is concern for officer safety, that there may be a firearm somewhere in the passenger compartment of the car to which the defendant or his two passengers can immediately access if returned to the car makes this case a very different situation because if probable cause did not develop, those defendant and the passengers had every expectation to believe that they would be returning to the car. And at that point, one of the main concerns for officer safety would not have been allayed. So an arrestee has maybe greater rights and privacy in his car than someone where there's not probable cause to arrest? Well, an important point in this case, Your Honor, unlike in Gant, is there is an actual nexus here between why the officers are even looking in the car. In this case, they were concerned for their safety and they were concerned about a firearm. So, therefore, they went directly to where a firearm might be concealed. In Gant, however, I thought they were looking for a rifle at first. No.  No, Your Honor. They testified that it almost looked like a rifle round. And their actions reflect that they were looking for a firearm and not a hunting rifle. But at the time they were looking in the car, weren't the defendants handcuffed? Yes, they were. Didn't that kind of do away with the safety issue? Not in this situation, Your Honor, because what the handcuffing did, it was just a brief temporary safeguard so that the officers could be safe and not be in fear of being shot at while they investigated whether there might be a firearm on the person, a defendant, and his passengers, or in the car where he could immediately access the firearm. And also, back to with respect to Gant versus Long, again, clearly missing in Gant was a nexus between why the defendant was arrested and the search of the car. There's no reasonable expectation that evidence of driving on a suspended license is going to be found in a car. In this case, the concern was officer safety, and the concern was that a firearm may be in the car, and there was a complete nexus that was not present in Gant. Your Honors, it is historically acknowledged that officers assume substantial risks when they confront people seated in automobiles. These encounters are part and parcel of almost every police officer's job, and it's not uncommon, as was the case here, for such an encounter to rapidly escalate from one that's neutral to one that spells dangers due to the possibility of a firearm in the immediate area of the suspect. Given the live pistol round in this case and all the surrounding circumstances, the officers acted reasonably, and all of their actions were fully in proportion to the facts as they played out before them and reflected their concern that there may be a pistol or a firearm in the car that could be used quickly and fatally against them. The law enforcement conduct in this case was fully in proportion with the demands of the situation as they developed, and there was no more than a slight incursion into the defendant's Fourth Amendment interests in this case. Therefore, again, Your Honors, for the reasons set forth today and those in our briefs, we respectfully request that you reverse the appellate court's order affirming the circuit court's suppression of the evidence. Thank you. Thank you for your arguments. Case number 111835, People v. Collier, is taken under advisement as agenda number one.